# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,            :

            Plaintiff,                        Case No. 3:06-cr-061
                                          Also 3:12-cv-302

                                    District Judge Thomas M. Rose
    -vs-                                Magistrate Judge Michael R. Merz
                          :

CHRISTOPHER HUNTER,

            Defendant.

---

# REPORT AND RECOMMENDATIONS;
# DECISION AND ORDER ON MOTION FOR
# EVIDENTIARY HEARING

---

This is an action under 28 U.S.C. § 2255 to Vacate the criminal judgment against Defendant on which he is serving a sentence of 360 months. The case is before the Court on Defendant's *pro se* Motion in Furtherance of Petition for Evidentiary Hearing in Accordance to Judicial Order (Doc. No. 152). Aside from any Grounds for Relief on which an evidentiary hearing will be held, the § 2255 Motion is ripe for decision on the merits.

Hunter pleads the following Grounds for Relief:

> **Ground One:** Ineffective assistance of counsel where counsel failed to conduct an adequate investigation.
>
> **Supporting Facts:** Failed to hire an investigator, failed to obtain video footage of crime scene, failed to know the law as it pertained to *Booker/FanFan*, failed to interview attorney Adrienne Brooks, failed to review case law presented to counsel by Movant.
>
> **Ground Two:** Ineffective assistance of counsel.

1

**Supporting Facts:**    Counsel misadvised Movant during plea negotiations pertaining to the evidence he would introduce during trial and his misadvising Movant relevant to the factual particulars as it applied to *Booker/FanFan.*

**Ground Three:**  Ineffective assistance of counsel.

**Supporting Facts**:  Counsel's failure to introduce the affidavit of Amanda Ward and Centerville Discovery material and use said evidence to impeach her testimony.

**Ground Four:**  Ineffective assistance of counsel.

**Supporting Facts**:    Counsel's failure to introduce the audio recordings of Rainwater and CI#-034 and used [sic] said evidence to impeach their testimony.

**Ground Five:**  Ineffective assistance of counsel.

**Supporting Facts:**    Counsel's failure to interview Adrienne Brooks in assessing whether or not she should be subpoenae [sic] as a possible witness.

**Ground Six:**  Ineffective assistance of counsel.

**Supporting Facts:**  Counsel['s] failure to request a lesser included offense instruction.

**Ground Seven**:  Ineffective assistance of counsel.

**Supporting Facts:**  The cumulative affect [sic] of these errors.

**Ground Eight:**    Ineffective assistance of counsel during sentencing.

**Supporting Facts:**    Failed to investigate, failed to perform effectively during the sentencing process, failed to challenge inaccuracies or omissions in the PSI report and failed to hold the court to the precepts of Fed. R. Crim. P. 32(1)(3)(B).

**Ground Nine:**  Ineffective assistance of counsel on appeal.

**Supporting Facts:**  Appellate counsel was ineffective for failing to raise an unreasonableness of the sentencing argument.

(Motion, Doc. No. 135, PageID 2277-79.)   Hunter seeks an evidentiary hearing on all nine

Grounds for Relief and clarifies that the first seven Grounds relate to the conduct of his trial attorney, Matthew Arntz, whereas Ground Eight refers to sentencing counsel William Daly, and Ground Nine refers to appellate counsel Kevin Schad. The United States opposes an evidentiary hearing for the reasons given in its Answer (Answer, Doc. No. 142; Response to Motion, Doc. No. 155).

An evidentiary hearing is to be held on a § 2255 Motion only if there is a factual dispute and the record does not conclusively show that the petitioner is not entitled to relief. *Ross v. United States*, 339 F.3d 483 (6th Cir. 2003). The burden of establishing entitlement to an evidentiary hearing is relatively light. *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). However, no evidentiary hearing is necessary if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999).

> In reviewing a § 2255 motion in which a factual dispute arises, "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). "[T]he burden on the petitioner in a habeas case for establishing an entitlement to an evidentiary hearing is relatively light." *Id.* More is required, however, than mere assertions of innocence. *See id.* ("[I]t would be nonsensical to conclude that the petitioner could meet that burden simply by proclaiming his innocence."). Nevertheless, "[a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Arredondo* [*v. United States,* 178 F.3d 778, 782 (6th Cir. 1999)] (internal quotations omitted). Stated another way, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (internal quotations omitted).

*Valentine v. United States*, 488 F.3d 325 (6th Cir. 2007).

Because Hunter is proceeding *pro se* at this point, he is entitled to a liberal construction of his pleadings and motion. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble,*

429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993).

**Standard for Ineffective Assistance of Counsel Claims**

All of Hunter's Grounds for Relief assert ineffective assistance of counsel, either at trial, at sentencing, or on appeal.  The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, ___, 130 S.Ct. 2250, 2264 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the

> presumption that, under the circumstances, the challenged action
> "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability
> that, but for counsel's unprofessional errors, the result of the
> proceeding would have been different.  A reasonable probability is
> a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing, *Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing, *Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987) quoting, *Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *cert. denied, ___ U.S. ___*, 132 S.Ct. 1760 (2012), *quoting Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 792 (2011).

Although there are two prongs to the *Strickland* test, courts need address only one prong if it is dispositive:

> Although we have discussed the performance component of an
> ineffectiveness claim prior to the prejudice component, there is no
> reason for a court deciding an ineffective assistance claim to
> approach the inquiry in the same order or even to address both
> components of the inquiry if the defendant makes an insufficient
> showing on one. In particular, a court need not determine whether
> counsel's performance was deficient before examining the
> prejudice suffered by the defendant as a result of the alleged
> deficiencies. The object of an ineffectiveness claim is not to grade
> counsel's performance. If it is easier to dispose of an
> ineffectiveness claim on the ground of lack of sufficient prejudice,
> which we expect will often be so, that course should be followed.
> Courts should strive to ensure that ineffectiveness claims not
> become so burdensome to defense counsel that the entire criminal
> justice system suffers as a result.

*Strickland v. Washington*, 466 U.S. 668, 697 (1984).

As to the prejudice prong, the test is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996), citing *Lockhart v. Fretwell*, 506 U.S. 364 (1993). "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won." *United States v. Morrow,* 977 F.2d 222 (6th Cir. 1992). Defects in assistance that have no probable effect on the trial's outcome do not establish a constitutional violation. *Mickens v. Taylor,* 535 U.S. 162, 166 (2002). To show prejudice the new evidence that a habeas petitioner presents must differ in a substantial way – in strength and subject matter – from the evidence actually presented at sentencing. *Hill v. Mitchell*, 400 F.3d 308 (6th Cir. 2005)(contains long analysis of cases finding no prejudice).

Hunter wishes at an evidentiary hearing to cross-examine his trial attorney, Matthew Arntz, on the following points:

1. Why he failed to engage the services of a private investigator.

2. Why he failed to obtain the video footage from March 23, 2005, at the Microtel Hotel.

3. Why he misadvised Petitioner in regard to the method used to determine a drug amount in a federal prosecution.

4. Why he promised Petitioner the use of particular evidence he planned to use at trial.

5. Why he failed to interview Attorney Adrienne Brooks and call her as a witness for the defense.

6. Why he allowed Petitioner to be tried and convicted of a non-existent federal crime (§ 924(c)).

7. The insufficient amount of time spent in conference with Petitioner to review the case.

(Motion, Doc. No. 152, PageID 2484-85.)

To show that there is a factual dispute on these matters, Hunter says "Petitioner will take the stand and testify [to] the truth of the matter." *Id.* at PageID 2485. This statement betrays a fundamental misunderstanding of the function of an evidentiary hearing in § 2255 cases. Hunter's conclusory statement that he will testify to "the truth of the matter" does not demonstrate that there is a factual dispute because Hunter does not tell the Court what he will testify to.

At this point comparison to summary judgment practice in civil cases is useful. Even though a plaintiff may have stated a claim for relief – pled in sufficient detail to withstand a motion to dismiss – he or she cannot avoid summary judgment merely by saying "when the time comes, I will testify to the truth of these matters." Rather, when faced with a summary judgment motion, the plaintiff must come forward with admissible proof to show that there is a genuine issue of material fact. The movant in a § 2255 case is in a similar position, except that the case has already been tried, a jury has found the defendant guilty beyond a reasonable doubt, and the court of appeals has affirmed the conviction. The § 2255 proceeding is not an occasion to retry the case.

Hunter is correct that there is information not presently in the record which might be added by the answers Attorney Arntz would give to the questions Hunter wants to pose to him. That, however, is not dispositive. It is necessary that facts sought to be elicited at an evidentiary hearing are not of record, but it is not sufficient. To put it another way, an evidentiary hearing in a § 2255 case is to resolve material factual disputes – disputes about facts that make a difference to the outcome -- not an occasion for a defendant to engage in a free-ranging cross-examination of his prior counsel about what was and was not done. If the facts sought to be elicited would not make a difference, the Court should not hold an evidentiary hearing on a defendant's hope

that something may turn up.


**Ground One:  Ineffective Assistance of Trial Counsel in Investigating**


In his First Ground for Relief, Hunter appears to accumulate claims of ineffectiveness against Mr. Arntz which are repeated or elaborated in other Grounds for Relief.  The assertion which is not repeated elsewhere is that Arntiz was ineffective in failing to hire an investigator to examine the video footage from the Microtel Hotel from March 23, 2005, or to examine it himself.  The facts relating to this part of the case as recited by the Court of Appeals are as follows:

> On March 23, 2005, Hunter and Ward went to the Microtel Hotel in Riverside. They checked in under Ward's name but paid with Hunter's cash. Hunter brought a large red cooler bag of cocaine into the room, as well as a press, coffee creamer (to cut the cocaine), and his gun. Once inside their room, Hunter began to mix and press cocaine; Ward passed out on the bed. Later in the evening, Hunter left the room to deliver cocaine to Ricky Rainwater in the stairwell outside. In doing so, he forgot his room key and locked himself outside. Ward, still asleep, did not answer her cell phone, so Hunter called Rainwater, who sent a friend to pick Hunter up. He also called Stafford to explain the situation. Around this time, local police received an anonymous tip that drugs were being sold or used in the hotel room Hunter and Ward had rented, and two officers arrived on the scene to investigate. When they knocked on the door, Ward answered. Upon searching the room, the officers discovered the cocaine and the gun. At this time, Ward told officers that her boyfriend, Christopher Hunter, would be back soon and would explain everything. To corroborate her story, Ward showed police a tattoo of his name on her neck and photographs of them together that she kept in her purse. A short while later, Hunter returned to the scene, riding shotgun in a car driven by a friend. He told officers that he did not know anyone named Amanda Ward, and police then let him go.

*United States v. Hunter,* 558 F.3d 495, 500 (6th Cir. 2009).

8

Hunter claims he told Arntz that he was never at the Microtel Hotel prior to the time the officers arrived and that video footage from security cameras would prove this. Hunter alleges:

> On March 23, 2005, police received a call that drugs were being distributed from this location. Upon officer's arrival, the room, registered to Amanda Ward was searched, and narcotics and a firearm were discovered. Contrary to the statements of Amanda Ward, Ricky Rainwater and Michael Stafford, Movant informed counsel that he was not at the location prior to law enforcements arrival. Movant requested that counsel review the video footage from the day in question and to hire a private investigator to look into this line of defense. Counsel never hired an investigator to review the video footage nor did he review said footage. During cross-examination of officer Sturgeon, counsel questioned him concerning the Microtel Hotel incident and whether there were surveillance cameras at the location. Officer Sturgeon informed trial counsel Mr. Arntz that there were cameras at the location and, that to his knowledge; the cameras were operational because he had viewed video footage from the location in the past. (Tr. T 194-96. It should also be noted that none of the officers investigating the Microtel incident viewed any of the video footage. The video footage was exculpatory evidence that would have exonerated the Movant. There was no physical evidence placing Movant at this location.

(Motion, Doc. No. 135, PageID 2286).

Hunter's characterization of Officer Sturgeon's testimony is inaccurate. He testified he had been to this motel many times and was thoroughly familiar with it, but only knew of a camera at the front desk (Tr. Tr. Doc. No. 99, PageID 569). He had reviewed footage from that camera on prior occasions to identify people coming to the desk, but on March 23, 2005, he had a tip which was specific to Room 204 for drug use or drug sales and therefore did not need to view the front desk film. *Id.* at PageID 572. Sturgeon also testified that there were four entrances into the motel. *Id.* at PageID 568. In addition to Officer Sturgeon's testimony, ATF Agent Dave McMullen, who became the lead federal investigator, did attempt to view the security footage from March 23, 2005, and found that it was unavailable. *Id.* at PageID 1842.

9

In contrast to Hunter's claims about Arntz's ineffectiveness regarding the tape, the record evidence shows that (1) there was one camera at the front desk, (2) footage from it would not have shown Hunter because, as he admits, the room was registered to Amanda Ward, and his absence from a registration video would therefore be highly inconclusive, (3) no footage existed by the time Agent McMullen tried to obtain it, so it is very unlikely it would have been available at a later date if Arntz or a private investigator hired by him looked for it.

Hunter insists that only Ward's testimony links him to the Microtel on March 23, 2005. But in addition there is a tattoo of his name on her neck, a picture of Ward and Hunter she took from her purse and showed the police, and her accurate prediction that Hunter would be returning shortly, even though when he showed up, he denied knowing anyone by that name. Hunter also offers the Court no innocent explanation of why he was at the Microtel so shortly after Ward predicted he would be there.

An attorney cannot be ineffective for failure to find evidence which, so far as anything in the record shows, does not exist. Video footage from the front desk, if it did exist, would not likely be exculpatory because the room was registered to Ward. Hunter has no evidence to support his First Ground for Relief and his assertion that an evidentiary hearing would produce such evidence is speculative at best. The First Ground for Relief should be dismissed with prejudice.

**Ground Two: Ineffective Assistance of Trial Counsel in Plea Negotiations**

Liberally construed, Hunter alleges in his Second Ground for Relief that Arntz gave him incorrect legal advice about what the Government would have to prove at trial, based on a

misunderstanding of *United States v. Booker*, 543 U.S. 220 (2005). As the Court understands it, Hunter thinks Arntz told him the Government would have to have five kilograms of cocaine in hand at trial to prove him guilty. Arntz believed that could not be proved, and on the basis of that belief Hunter turned down a plea offer for substantially less imprisonment than he actually received.

The Government concedes that an evidentiary hearing is necessary on this Ground because it allegedly involves off-record advice from Arntz to Hunter. Accordingly, as to this Ground for Relief, the motion for evidentiary hearing is granted. As a condition of the hearing, Hunter shall set forth in a sworn affidavit the details of what he is prepared to testify to: the dates, times, places, and content of the advice given and the plea offer(s) he rejected on the basis of that advice. Hunter shall file that affidavit with any objections he files to this Report.

As the Court stated in its Order for Answer (Doc. No. 136):

> Defendant should be aware that a claim of ineffective assistance of counsel impliedly waives the privilege as to any attorney-client communications relevant to any such claim. *In re Lott*, 424 F.3d 446 (6th Cir. 2005)*; Tasby v. United States,* 504 F.2d 332 (8th Cir. 1974); *Randall v. United States,* 314 F.2d 800 (10th Cir. 1963); *United States v. Ballard*, 779 F.2d 287 (5th Cir. 1986); *Laughner v. United States,* 373 F.2d 326 (5th Cir. 1967); *Crutchfield v. Wainwright*, 803 F.2d 1103 (11th Cir. 1986).

By virtue of this waiver, Mr. Arntz is free to testify and to discuss with the United States Attoney what his testimony will be.

## Ground Three: Ineffectiveness of Counsel from Failure to Introduce the Affidavit of Amanda Ward and the "Centerville Discovery" Materials

About a month after the March 23, 2005, incident, Amanda Ward was stopped by the Centerville Police for a traffic offense and discovered to be in possession of a bag of cocaine.

11

Based on that arrest, police obtained a search warrant for the apartment Ward was sharing with Hunter.  When the warrant was executed the same night, Hunter was found with residue-tainted scales, "cut," cocaine, and $1,035 in cash.  *United States v. Hunter, supra*, at 500.

During the traffic arrest, Ward initially told Detective Eckenrode that the cocaine she was found with belonged to "Danny Romaine."  Upon further questioning she made many incriminating statements about Hunter, statements used to obtain the search warrant for the Maple Avenue apartment she said she shared with Hunter and Michael Stafford and in which she accurately predicted officers would find drug trafficking equipment.

On July 25, 2005, Ward had attorney Adrienne Brooks prepare for her signature an Affidavit in which she states that various statements she made to Detective Eckenrode were false (Motion, Doc. No. 155, Exhibit 1, PageID 2306).  This was about three months before Hunter was arrested on the warrant in this case (See Doc. Nos. 1-4).  Exhibit 2 (PageID 2308-09) consists of two pages apparently taken from a police report about Ward's Centerville arrest and constitutes the Centerville Discovery materials Hunter says Arntz should have used.

If Hunter is suggesting the Ward Affidavit could have been introduced as substantive evidence of his innocence, he is wrong.  The Affidavit is classic hearsay if offered for that purpose.  Ward was of course a principal witness against Hunter at trial and to the extent the Affidavit constitutes a prior inconsistent statement on her part, it could have been used to cross-examine her.

For the reasons given by the United States in its Answer, it is doubtful the Affidavit could have been introduced because, while it was inconsistent with what she told Detective Eckenrode, it was only marginally inconsistent with her trial testimony (Doc. No. 142, PageID 2420-25).  For example, Attorney Arntz carefully prevented her from testifying that Hunter threatened her

or intimidated her.

Even if the Affidavit had been admissible, its use carried serious risks that Ward would be questioned about the statements she had made to Eckenrode she was recanting in this Affidavit. E.g., if she "explained" her prior statements to Eckenrode about threats from Hunter, she might well have recanted the recantation. At the time she had the Affidavit prepared, she was obviously less hostile to Hunter's position than she was by the time of trial.

If the purpose of the Affidavit or the Centerville Discovery materials was to undermine Ward's credibility, Arntz did that with his cross-examination of Eckenrode. In fact, Ward herself had admitted on direct that she had lied to Eckenrode for a long time on the night of her arrest. In sum, Hunter cannot show deficient performance in Arntz's failure to offer either the Ward Affidavit or the Centerville Discovery materials in evidence.

This Ground for Relief also fails on the prejudice prong of *Strickland*. The Government's case was not completely dependent on Ward's testimony; it also had testimony from what Hunter describes as virtually all of his associates. Given that Ward had been impeached with her prior convictions and her repeated lies to Eckenrode, coupled with all of the other direct testimony, it is unlikely that further impeachment of Ward would have been useful.

Ground Three should be dismissed with prejudice.


**Ground Four:   Ineffective Assistance of Counsel on Recordings of Rainwater and Confidential Informant Johnny Baker**

In his Fourth Ground for Relief, Hunter asserts Arntz provided ineffective assistance of trial counsel when he failed to play for the jury recordings of the conversations between Rainwater and CI 34 (Motion, Doc. No. 135, PageID 2293).

Both Rainwater and Baker testified as witnesses for the United States. When Arntz cross-examined them, he used his knowledge of what was on the recordings to cross-examine them. With respect to the particular statements made on the tape which Hunter believes shows that Rainwater instead of Hunter was the supplier of cocaine, Baker's testimony at trial was that he did not remember making that statement. The tape would show that in fact he made the statement, not that he was lying when he said at trial that he did not remember making the statement. Although the recording could have been used to refresh his recollection, that does not make it substantive evidence of whose cocaine it was about which Rainwater was speaking.

Secondly, the conversation is nowhere near as exculpatory as Hunter argues. He raised a claim about this in his *pro se* brief on appeal and the Sixth Circuit wrote as follows:

> ### 5. Knowing Use of False Testimony
>
> Hunter argues in his *pro se* brief that the United States knowingly [*505] used false testimony in his trial. Hunter asserts that Ricky Rainwater was the mastermind of the conspiracy, and that the Government knew this because it had recorded a conversation in which Rainwater says Hunter is trying to get cocaine from him (as opposed to the other way around). [5] To succeed on a claim that his conviction was obtained with evidence the Government knew or should have known was false, Hunter must show: (1) that the statements were actually false; (2) the statements were material; and (3) the prosecution knew they were false. *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993). Because this issue was not timely raised in the district court, we review for plain error. Fed. R. Crim. P. 52(b); *Johnson*, 520 U.S. at 467.

> ### FOOTNOTES

> [5] Hunter also contends that Rainwater lied about the amount of drugs involved in the conspiracy, and that the Government knew of this, but he offers no evidence other than his own assertion to support this claim.

14

Here, Hunter has not offered evidence sufficient to show that the testimony was false or that Government knew this to be true. Apart from his own assertion, the only evidence Hunter offers in support of his claim is the conversation between Rainwater and the confidential informant. But this conversation does not show that Rainwater's testimony was false or that the Government was aware of this. At most, it shows that some of Rainwater's testimony was inconsistent, which was already clear at trial. Further, this isolated conversation sheds little light on the nature of Hunter's activities during the whole seven-year period in question, and it is inconsistent with the testimony of the half-dozen individuals that testified against Hunter at his trial.

For the foregoing reasons, we reject Hunter's claim that the United States knowingly used false testimony in his trial.

*United States v. Hunter, supra,* at 504-05.

Finally, as the United States points out, these tapes had already been played for the jury, so Hunter's argument amounts to saying it was ineffective assistance to fail to play them again. But the rules of evidence would have allowed Judge Rose to exclude a second playing as repetitive.

Hunter has not shown it was ineffective assistance to fail to replay the Rainwater-Baker tapes or that any prejudice flowed from that failure. Nor has he shown there is any disputed factual issue on this matter. The Fourth Ground for Relief should be dismissed with prejudice.

**Ground Five: Ineffective Assistance in Failing to Interview Adrienne Brooks or Call her as Witness**

On November 1, 2005, this Court issued a warrant for Ward's arrest on charges of conspiring with Hunter, Rainwater, Stafford, Mark Williams, and James Vroom to distribute in excess of 500 grams of cocaine and particularly for possession with intent to distribute on March

23, 2005, along with Hunter.  Adrienne Brooks is the attorney who prepared the Ward Affidavit in July 2005 between the March incident and the November charges.

Hunter asserts that Brooks should have been interviewed by Arntz and perhaps subpoenaed to testify about Ward's state of mind when she asked Brooks to prepare the Affidavit.  This assertion ignores the fact that Brooks would have been prohibited by attorney-client privilege from disclosing her conversations with Ward, who was her client, either privately to Arntz or in testimony.  It also ignores the hearsay rule.  Assuming that Ward would have waived attorney-client privilege at a time when she was herself under indictment, Brooks could have testified about Ward's state of mind only from what Ward said to her.  This is classic hearsay.

Thus there is no showing of deficient performance on Mr. Arntz's part for not attempting to breach the privilege or gather inadmissible hearsay evidence.  Nor is there any suggestion of prejudice:  Hunter has no source for what Brooks knew and she herself is deceased.

Ground Five is without merit and presents no factual disputes.  It should be dismissed with prejudice without an evidentiary hearing.


**Ground Six:  Failure to Request a Lesser-Included Offense Instruction**


Hunter asserts Arntz provided ineffective assistance of trial counsel when he failed to request a jury instruction on the lesser included offense of conspiring to distribute in excess of 500 grams of cocaine, Count 1 having charged a five-kilogram-plus conspiracy.  Hunter refers to this as giving the jury a "third option."

Hunter is correct that conspiracy to distribute 500 grams of cocaine is indeed a lesser

included offense of conspiracy to distribute five kilograms of cocaine. But he fails to establish that Arntz's failure to request the instruction is ineffective assistance of trial counsel.

First of all, it is clear this was a strategic choice on Arntz's part, rather than a failure to understand that a lesser included offense was available. In fact, as the Answer shows, Arntz successfully resisted the Government's effort to show drug quantities in a particular way so that they would have to prove five kilograms or suffer an acquittal. Under *Strickland*, counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell,* 274 F.3d at 337, 359 (6th Cir. 2001), *quoting Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984).

Hunter's only attack on this strategic choice of Arntz is that with the "third option," the jury might well have found him guilty of the lesser included offense which carries a mandatory minimum sentence of five years instead of ten. What this argument misses is that the "third option" gives the jury two choices to convict and only one to acquit.

As the Government's Answer makes clear, the mandatory minimum sentences for the two different offenses had no impact on the sentence in this case. Upon conviction on either offense, Judge Rose would have been obliged to make Sentencing Guideline findings which would have resulted in a guideline range of 360 months to life. A sentence within that range was available regardless of whether the jury convicted at the 500 gram or five kilogram level.

In sum, the strategic choice of "all or nothing" was a better choice than the "third option" and there was certainly no prejudice from making the choice Arntz made. Ground Six presents no factual dispute and is without merit; it should be dismissed with prejudice.

**Ground Seven:  Cumulative Effect of Instances of Ineffective Assistance of Trial Counsel**

Hunter argues that, even if the individual instances of Arntz's ineffective assistance of trial counsel are not enough to grant relief, they are sufficient when considered cumulatively. However, the Sixth Circuit has held that post-AEDPA, that claim is not cognizable." *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir.), *cert. denied,* ___ U.S. ___, 132 S.Ct. 2751 (2011), citing *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied,* 549 U.S. 1027 (2006); *Moreland v. Bradshaw*, 699 F. 3d 908, 2012 U.S. App. LEXIS 23420, 53-54 (6th Cir. 2012). Ground seven should be dismissed for failure to state a claim upon which relief can be granted under § 2255.

As part of this Ground for Relief, Hunter argues he provided Arntz with *United States v. Combs*, 369 F.3d 925 (6th Cir. 2004), which is dispositive of the 924(c) count of the Indictment. However, relying on *Combs*, the Sixth Circuit reversed Hunter's 924(c) conviction and the United States dismissed that count of the Indictment on remand, taking five years off Hunter's sentence.  There can be no prejudice at this point from whatever Arntz did or did not do with the *Combs* citation since Hunter has already won on that point.

Ground Seven raises no disputed factual issues and is without merit; it should be dismissed with prejudice.

**Ground Eight:  Ineffective Assistance of Sentencing Counsel**

In his Eighth Ground for Relief, Hunter asserts he received ineffective assistance of counsel from William Daly who was appointed as trial attorney when Arntz withdrew after

Hunter accused him of ineffective assistance of trial counsel. The day after Daly was appointed, Hunter moved to expedite sentencing and indicated he wanted no further continuances of sentencing regardless of what Daly might file (Doc. No. 79).

Having attempted to deny Daly sufficient time to prepare for sentencing, Hunter now accuses Daly of "fail[ing] to investigate, fail[ing] to perform effectively during the sentencing process, fail[ing] to challenge material inaccuracies or omissions in the PSI, and fail[ing] to hold the court to the law as it is referred to [in] Fed. R. Crim. P. 32(1)(3)(B)" (Motion, Doc. No. 135, PageID 2300.)

First of all, Hunter criticizes Daly for not having the transcript prepared and then reviewing it before sentencing. *Id.* The first Notice of Appeal was filed in this case on May 9, 2007 (Doc. No. 91). A request to prepare the transcript for appeal was then filed July 9, 2007 (Doc. No. 95). It took the court reporter until October 24, 2007, more than ninety days thereafter to prepare and file the transcript (Doc. Nos. 98-108). For Daly to have requested the transcript and then review it after it was prepared would have extended the sentencing process at least 100 days, at a time when Hunter was demanding that sentencing go forward (See Motion to Expedite, Doc. No. 79).

Hunter asserts Daly should have required Judge Rose to make "a factual determination as to the specific amount of drugs involved in the case." (Motion, Doc. No. 135, PageID 2301). Daly did argue extensively that the drug quantity in the PSI had not been proved, and Judge Rose found the trial testimony supported a range of 67-96 kilograms within the 50-150 kilogram Sentencing Guideline range.

Hunter presented this issue on appeal and the Sixth Circuit found:

> Hunter also challenges the district court's finding during

sentencing that the conspiracy involved more than fifty kilograms of cocaine, which yielded an offense level of 36 under U.S. SENTENCING GUIDELINES MANUAL § 2D1.1. This factual finding must be upheld unless it is clearly erroneous. *United States v. King*, 516 F.3d 425, 427 (6th Cir. 2008).

As noted above, a number of Hunter's associates testified at trial as to the volume of his daily cocaine sales and the length of the conspiracy. Stafford and Rainwater offered specific estimates as to the amount of cocaine Hunter distributed from 2002 to 2004; when combined, these estimates result in a range of 46.49 to 69.17 kilograms. Prior to this period, Stafford also testified that Hunter received one to three ounces a day during the year they lived together on Wayne Avenue, and an ounce a couple of times a week when they lived on Fair Oaks. Ward, Rainwater, and Williams all identified additional times and locations that Hunter received or processed cocaine, but did not make specific estimates as to the amounts involved. Consistent with the testimony at trial, the presentence report estimated Hunter to be responsible for the distribution of between 67 and 96 kilograms of cocaine.

Because Hunter has not offered evidence to contradict either the testimony at trial or the estimate of the presentence report, the district court was entitled to rely on those estimates in making its ruling. *See United States v. Geerken*, 506 F.3d 461, 467 ("When a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant."); *United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir. 1998) ("Testimonial evidence is sufficient to support a finding as to the quantity of drugs attributable to the defendant."). Thus, the district court's determination that Hunter conspired to distribute more than fifty kilograms of cocaine was not clearly erroneous.

*United States v. Hunter*, 558 F.3d at 506.

Hunter's argument that Daly could have produced evidence from the trial transcript that would have contradicted Judge Rose's findings is belied by his failure to cite any such evidence in his Motion, now that the transcript has been made. Nor does Hunter suggest the existence of any evidence outside the record which he brought to Daly's attention and which Daly could have presented (See Motion, Doc. No. 135, PageID 2302.)

Hunter asserts Daly did not know the law because he argued at sentencing that drug amounts had to be charged and proven to the jury beyond a reasonable doubt under the *Apprendi* line of cases.  As of the time Daly made the argument, the full implications of *Apprendi* had not been enunciated by the Supreme Court.  Indeed, even this last term the Court decided that any fact that makes a defendant eligible for the mandatory minimum sentence for an offense is an "element" which must be submitted to the jury.  *Alleyne v. United States*. 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), overruling *Harris v. United States,* 536 U.S. 545 (2002), which itself if a post-*Apprendi* holding.  Whether *Apprendi* would have any impact on the Sentencing Guidelines was a much mooted point until *Booker* was decided.  As the Government notes, many attorneys were making the same argument at the time Daly made this one; failing to make the argument would have waived it should the Supreme Court have decided the other way. In any event, there is no prejudice from Daly's having made the argument.

Ground Eight does not raise any factual dispute and is without merit; it should be dismissed with prejudice.


**Ground Nine:  Ineffective Assistance of Appellate Counsel**


After sentencing, Mr. Daly filed a Notice of Appeal to protect Hunter's rights (Doc. No. 91).  He was replaced as appellate counsel by Kevin Schad.  Hunter asserts that Schad provided ineffective assistance of appellate counsel because he did not argue that the sentence was substantively unreasonable, particularly as to drug quantity and the disproportion between his sentence and that of "his co-defendant's [sic] and the time that they received." (Motion, Doc. No. 135, PageID 2303).

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id. citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id. citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir, 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Appellate counsel is not ineffective for failure to predict the development of the law. *Thompson v. Warden*, 598 F.3d 281 (6th Cir. 2010), citing *Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir. 2001)(not ineffective assistance of appellate counsel to fail to anticipate *State v. Foster* in an appellate district which had ruled the other way.) *Accord, Carter v. Timmerman-Cooper*, 2010 U.S. App. LEXIS 10549 (6th Cir. May 25, 2010)

Hunter does not recite in his Motion what sentences were received by his co-conspirators. It is clear from the record, however, that his own sentence was driven by the quantity of drugs involved, his leadership role in the conspiracy, and his own past criminal history. Judge Rose calculated the Sentencing Guideline range at 360 months to life, apart from the 924(c) sentence which was later vacated. Hunter was sentenced at the absolute bottom of the range.

23

Hunter's claim that there was a "lack of direct evidence linking the Movant to drug trafficking" misunderstands what direct evidence is.  The Government's case consisted largely of the testimony of persons who Hunter characterizes as "almost all of his associates" about his long-term involvement with them in dealing drugs.  They testified about acts of his they observed and drug transactions they carried out with him or at his instruction.  That is direct evidence.  If what Hunter means is "physical evidence" such as his fingerprints on drug trafficking equipment, that is circumstantial evidence, not direct evidence.

As the Government points out, the sentence imposed was within, and indeed at the bottom of, the Sentencing Guidelines range and therefore presumptively reasonable under *United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008).  Like the appellant in United States v. Bell, 385 Fed. Appx. 448 (6th Cir. 2010), Hunter has pointed to no case where the Sixth Circuit has found a sentence at the bottom of the Guideline range to have been substantively unreasonable.  It was therefore not ineffective assistance of appellate counsel for Attorney Schad to have failed to make an argument which was very unlikely to succeed.

Ground Nine raises to factual disputes and is without merit; it should also be dismissed with prejudice.

**Conclusion**

With the exception of Ground Two, the Motion to Vacate raises no factual disputes which require an evidentiary hearing to resolve.  The Motion for Evidentiary Hearing as to all Grounds for Relief except Ground Two is denied.  The Motion for Evidentiary Hearing as to Ground Two is granted on the condition that Hunter files the affidavit required by this Order.

Apart from Ground Two, it is respectfully recommended that the Motion be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

August 30, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).