# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,     :

          Plaintiff,                         Case No. 3:06-cr-061
                                                    Also 3:12-cv-302

                                             District Judge Thomas M. Rose
        -vs-                                   Magistrate Judge Michael R. Merz
                                 :

CHRISTOPHER HUNTER,

          Defendant.

# REPORT AND RECOMMENDATIONS

This is an action under 28 U.S.C. § 2255 to obtain relief from a conviction in this Court for conspiring to distribute cocaine and the consequent sentence of imprisonment (ECF[1] No. 27). It is ripe for decision on Ground Two, the sole remaining Ground for Relief, on which the Court held an evidentiary hearing (Transcripts, ECF Nos. 184, 188). Post-hearing, the parties have briefed the merits of Ground Two (ECF Nos. 195, 200[2], 205). For the hearing and subsequent briefing, Hunter has had the assistance of appointed counsel, Attorney Toby Henderson.

---

[1] This Court has been accustomed to cite to federal court records by document number ("Doc. No.") However, the newly-published 20th edition of the Bluebook prescribes use of "ECF No." A Uniform System of Citation, Rule 10.8.3 (20th ed. 2015).
[2] The Government's Brief is sixty-four pages long, but does not comply with the "summary" requirement in S.D. Ohio Civ. R. 7.2(a)(3). The United States Attorney is reminded that Judge Rose requires advance permission for any memorandum over twenty pages, including objections or responses to objections.

**Procedural History**

Hunter was indicted March 28, 2006 (ECF No. 22).  The case was tried to a jury in July 2006 which convicted Hunter on all four counts in a Superseding Indictment returned April 25, 2006 (Verdict, ECF No. 51).  After reviewing a Presentence Investigation Report, Judge Rose imposed an aggregate sentence of 420 months imprisonment (Judgment, ECF No. 93).  On appeal the Sixth Circuit reversed Hunter's conviction for violating 18 U.S.C. § 924(c)(1), but affirmed the convictions and sentence on the remaining counts.  *United States v. Hunter*, 558 F.3d 495 (6th Cir. 2009).  After Judge Rose entered an Amended Judgment on remand (Doc. No. 119), Hunter appealed again, but this time the Sixth Circuit affirmed.  *United States v. Hunter*, 646 F.3d 372 (6th Cir. May 25, 2011).  Hunter's conviction became final on direct appeal when the Supreme Court denied certiorari October 7, 2011 (ECF No. 134).  Hunter's § 2255 Motion was filed September 11, 2012, almost a year later but within the statute of limitations (ECF No. 135).

Hunter's § 2255 Motion pleads nine grounds for relief. *Id.* at PageID[3] 2277-79).  On August 30, 2013, the Magistrate Judge recommended that Grounds One and Three through Nine be dismissed (Report and Recommendations, ECF No. 158; hereinafter "Report").  District Judge Rose adopted that Report on October 29, 2013 (ECF No. 167).  Hunter appealed from that decision (ECF No. 174), but the Sixth Circuit dismissed the appeal for lack of jurisdiction because Judge Rose's order did not dispose of all claims in the case*;* that is, it was not a final

---

[3] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page.  The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference.  (E.g., Defendant's Motion to Dismiss, Doc. No. 27, PageID ___.)  The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy.  Therefore, nonconforming filings will be stricken.  Neither Hunter's Brief nor his Reply Brief complies with this Standing Order; any further filings which do not comply will be stricken.

appealable order.  *Hunter v. United States,* 2014 U.S. App. LEXIS 11322 (6th Cir. Mar. 25, 2014).  The evidentiary hearing was begun on April 15, 2014, and completed June 19, 2014. Post-hearing briefing was not complete until January 2015.

# Analysis

Ground Two for Relief, on which the Report concluded an evidentiary hearing was necessary, claims "Counsel misadvised Movant during plea negotiations pertaining to the evidence he would introduce during trial and his misadvising Movant relevant to the factual particulars as it applied to *Booker/FanFan.*" (Quoted at Report, ECF No. 158, PageID 2555.) Interpreting Ground Two, the Report concluded:

> Liberally construed, Hunter alleges in his Second Ground for Relief that [Attorney Matthew Ryan] Arntz gave him incorrect legal advice about what the Government would have to prove at trial, based on a misunderstanding of *United States v. Booker*, 543 U.S. 220 (2005). As the Court understands it, Hunter thinks Arntz told him the Government would have to have five kilograms of cocaine in hand at trial to prove him guilty. Arntz believed that could not be proved, and on the basis of that belief Hunter turned down a plea offer for substantially less imprisonment than he actually received.

(Report, ECF No. 158, PageID 2563-64).

In Defendant's post-hearing Brief in Support of Motion for Relief under 28 USCA § 2255 (ECF No. 195, hereinafter "Hunter Brief"), Hunter argues that Arntz also provided ineffective assistance of trial counsel in failing to use the Affidavit of Amanda Ward as evidence at trial and failing to play certain audio recordings of Mr. Rainwater and CI #034. *Id.*  at PageID 3149-51, 3169-70).  These two claims were the subject of Grounds for Relief Three and Four which read

> **Ground Three:** Ineffective assistance of counsel.
>
> **Supporting Facts**: Counsel's failure to introduce the affidavit of Amanda Ward and Centerville Discovery material and use said evidence to impeach her testimony.
>
> **Ground Four:** Ineffective assistance of counsel.
>
> **Supporting Facts**: Counsel's failure to introduce the audio recordings of Rainwater and CI#-034 and used [sic] said evidence to impeach their testimony.

(Motion, Doc. No. 135, PageID 2277-79, quoted at Report, ECF No. 158, PageID 2555.)

Testimony on these claims was taken during the evidentiary hearing and the issues are briefed by the parties. However, the Report recommended those claims be dismissed and Judge Rose has adopted that Report (Entry and Order, ECF No. 167). Those claims are no longer at issue in the case and no further analysis of them is offered in this Report.

A claim of ineffective assistance of trial counsel is to be judged on the standard adopted in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.   Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *cert. denied,* ___ U.S. ___, 132 S.Ct. 1760 (2012), *quoting Harrington v. Richter*, 562 U.S. 86, ___, 131 S. Ct. 770, 792 (2011).

Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors.  *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997).

The right to effective assistance of counsel applies to the plea negoation process.  *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012); *Lafler v. Cooper*, 566

U.S. ___, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012).

Hunter's claim on the deficient performance prong of *Strickland* is that his trial attorney, Matthew Ryan Arntz, "repeatedly and erroneously advised him he may [sic] not be convicted of a drug conspiracy because the government was required to have seized drugs equal to the amount charged."  (Hunter's Brief, ECF No. 195, PageID 3149).  As to the prejudice prong, Hunter claims that the Government made various offers for him to plead guilty and receive a substantially shorter sentence than the thirty-five years he is serving.  *Id.*

The precise bad advice Hunter alleges he received is that Arntz told him the Government "had to have seized drugs in an amount equal to the quantity identified in the charging document and that drug quantity was no longer a sentencing issue and, instead, was an issue for trial." *Id.* at PageID 3151.

**Hunter's Direct Testimony at the Evidentiary Hearing**

Hunter was his own sole witness at the evidentiary hearing.  His testimony is summarized as follows:

When Hunter made his initial appearance on November 8, 2005, he received and read a copy of the Criminal Complaint in this case which charged him in Count 1 with conspiring to possess with intent to distribute in excess of 500 grams of cocaine (Transcript, ECF No. 184, PageID 2803).  Hunter testified "I told him [Arntz] that it doesn't seem like they got quite what was there.  There was less than 500 grams; almost 400 grams.  And I told him, you know, I really don't see where I was involved with more than two or three ounces of that.  And he had told me it looks like the case is kind of weak." *Id.*  Hunter explained that, although he had not yet

6

received discovery, "the sales were in the back of the affidavit," *Id.* at PageID 2803-04. The Complaint and Affidavit were marked as Exhibit 1 at the evidentiary hearing. The Affidavit is nineteen single-spaced pages long and was tendered to the Court in support of both arrest warrants for Hunter and others and a search of 92 Notre Dame Avenue in Dayton (ECF No. 1). Hunter testified that when Arntz said the case was weak, Hunter took it to mean "they had to come up with the entire amount . . . you can't find me guilty if you don't have all 500 grams of cocaine." (Transcript, ECF No. 184, PageID 2804).

In early December 2005, Hunter signed a waiver of timely indictment, but told Arntz he was not interested in a plea bargain which would require him to name a source or otherwise cooperate. *Id.* at PageID 2806. He did sign the waiver, however, in order to permit plea negotiation. *Id.*

In early January 2006, Arntz came to him with a plea offer with a sentencing range of 57 to 71 months. *Id.* at PageID 2808-09. They did not discuss drug quantities at that time. *Id.* The next thing that happened is that Hunter was taken to the office of then-Assistant United States Attorney Margaret Quinn[4] for a proffer session. *Id.* at 2810. He has not expected that and told the agents and Ms. Quinn "Look, I'm not trying to go this route." *Id.* Ms. Quinn responded that if he didn't cooperate, he was "going to get ten years; if you go to trial, you're going to get 15. . . . If you don't do this, I'm going to indict you for five kilograms. I've got enough to get you for five kilograms. And I kind of chuckled. You know, not – in my mind, I'm thinking you don't even have 500 grams; my lawyer's already said that this is weak, you know; and now you're telling me you're going to go five kilos." *Id.* He spoke privately with Arntz who told him the proffer was part of the plea bargain. *Id.* at PageID 2812. They did not discuss drug quantities at

---

[4] Ms. Quinn has since retired from Government service and been elected Judge of the Oakwood, Ohio, Municipal Court. She by statute must reside in that city, which is within subpoena range of this Court.

that time.  *Id.*

Arntz came to him again in February 2006 and explained that the Government was willing to agree to a sentencing range of 117 to 131 months or they were going to indict him for five kilograms.  *Id.*  at PageID 2814.  He asked Arntz how they could indict him for five kilograms when "they don't even have 500 grams" and Arntz said "They'll have to come up with it."  *Id.*  They had no discussion at that time about how the Government could prove five kilograms.  *Id.*  at PageID 2815.  He testified he and Arntz never discussed how the Government could prove the five kilograms through witness testimony. *Id.*  at PageID 2816.

The grand jury did return an Indictment on March 28, 2006, in which the amount involved in the conspiracy was increased to five kilograms (ECF No. 22, PageID 51).  Just before the indictment, Hunter rejected a plea agreement in the 9-10 year range because, he testified

> According to what he had told me, by me not actually personally being involved with all the sales and the 500-gram amount, I didn't really think I was guilty of that because I didn't have the 500 whole grams.  And then, with the threat of being indicted for five kilograms and him informing me that they would have to produce it, I made the decision to turn the plea bargain down.

*Id.*  at PageID 2820.

After the Superseding Indictment was filed, Hunter and Arntz had a conversation at Hunter's new place of detention, the Miami County Jail, in which Hunter testified Arntz told himr that "a new law had passed recently by the name of *Booker/Fanfan*; that drug amount was no longer a sentencing issue." *Id.*  at PageID 2823.  Hunter testified that Arntz told him at the same time that the Government would still have to come up with "the actual amount of drugs." *Id.*  at PageID 2826.  This was the same thing he had been saying all along, but this time he put

the name "*Booker/Fanfan*" on it. *Id.*  They had no discussion about what impact drug quantity could have on sentencing. *Id.*  at PageID 2827.

At the time of the best case/worst case scenario hearing on July 3, 2006, the Government attorney spoke about possible sentencing guideline enhancements for having a leadership role, and obstruction/witness intimidation, but none for drug quantity *Id.*  at PageID 2835-36.

Hunter's testimony is the sole evidence presented to support his Motion, except for prior court records marked as Defendant's Exhibits.[5]


**Deficient Performance**


The first prong of the *Strickland* analysis requires Hunter to prove that Arntz gave him what would have been very bad advice on what the Government would have to prove to succeed on Count 1.  It is certainly not the case now, nor was it the case in 2005-2006, that to prove a drug conspiracy involving five kilograms of cocaine or more, the Government had to produce five seized kilograms of cocaine in open court.  Drug seizures in that amount are not unknown, but in the ordinary course of a drug trafficking business carried on over a five-year or longer period, dealers acquire and sell the drugs and then those drugs are consumed by the buyer, not kept so as to be available for seizure by law enforcement.  Here the Government's proof was of a very traditional sort:  participants in the business who had entered into plea agreements requiring their cooperation, testified about how the business was done over a number of years

Matthew Arntz was appointed as counsel for Hunter on the day of his initial appearance. His name was selected by the Court from the list[6] maintained under the Criminal Justice Act for

---

[5] Exhibit 12 is a set of jail visitation records which document visits by Arntz, Christon, and Wagner.
[6] The CJA Panel list is maintained under the supervision of Chief Magistrate Judge Sharon Ovington and her CJA

experienced criminal defense attorneys and he has been a member of the bar of this Court and of the CJA panel for many years, including many years before he accepted the appointment in this case.

In order to find deficient performance of the sort alleged by Hunter, the Court would be required to find that Mr. Arntz made a very bad mistake on the law and that he frequently repeated that mistake in his advice to Hunter during the eighteen months he represented Hunter in this case.  The mistake would have been one of criminal evidence law, the subject Mr. Arntz teaches at the University of Dayton School of Law as an Adjunct Professor.[7]  This is what Hunter claims Arntz did.

Arntz adamantly denies that he every gave such advice:

> Q. In the next paragraph [of Hunter's pre-hearing Affidavit[8]] there's a representation about you and him discussing drug quantity amounts, specific cocaine amounts that were seized, and that you had told him that the government was, quote, a long way off, end quote.  Did you ever tell him that?
>
> A. Well, I think what he's referring to there is discussions we had, and we had more than one, about the specific quantities of drugs that were seized on various occasions by the government in his case. And we would total those quantities up, and he was concerned that those quantities didn't total up to the amount that was alleged in the indictment.
>
> I do remember we had that discussion. But at no time did I represent to him that because -- simply because the government had not physically seized the exact quantity of cocaine that was alleged to be involved in the indictment that it was impossible for the government to convict him.

---

committee.  It is repopulated frequently and, in accordance with national standards, limited in number to ensure that members have frequent experience in federal court.  Continuing legal education is provided at least annually and participation is required.

[7] Information from public website of the University of Dayton School of law at https://www.udayton.edu (visited August 23, 2015).

[8] Hunter's request for evidentiary hearing was very broad.  Essentially he said the Court should set a hearing and the truth would come out.  The Court required Hunter to file an affidavit stating what he expected to prove at the hearing.

> Q. Did you affirmatively explain to him that there were other ways beyond just drug seizures to prove drug quantity?
>
> A. Yes. That would have been in the discussion of the nature of conspiracy, which we had a couple of times.

(Transcript, ECF No. 188, PageID 2995-96.)

Hunter's claim that Arntz gave the complained-of advice is entirely dependent on his own testimony at the evidentiary hearing. He offers no external corroboration at all. For example, although he did a good deal of *pro se* writing in this case, he offers no proof that he memorialized Arntz's advice in writing. Nor does he offer oral testimony from anyone else to show that Arntz told him what he claims. In particular there was testimony he consulted two other Dayton area attorneys, Jimmy Christon[9] and H. Charles Wagner, both long-time members of the bar of this Court, but he offered no evidence from either one of them that he told them about Arntz's advice and sought a second opinion.

The first *Strickland* prong, then, turns entirely on the comparative credibility of Hunter and Arntz. Hunter offers extensive argument to undermine Arntz's credibility (Hunter's Brief, ECF No. 195, PageID 3153-62). He argues there are important aspects of the pre-trial process that Arntz did not remember. *Id.* However, the evidentiary hearing was eight years after the trial and any busy trial lawyer is apt to forget details from a case that old. Arntz admits he and Hunter had frequent discussions of the amount of cocaine seized (Transcript, ECF No. 188, PageID 3003.) But that fact could as well corroborate Hunter's fixation on this question as the claim that Arntz repeated the bad advice. Arntz admitted not interviewing the co-conspirators (Transcript, ECF No. 188, PageID 3045-46), but it is highly unlikely they would have talked to him. Arntz made much of the absence of five kilograms in the courtr0oom in his closing argument, but that was merely good rhetoric: it could well have undermined the credibiluity of

---

[9] Hunter's criminal record confirms that Chrison represented Hunter on two prior drug-related charges.

co-conspirator testimony in the jurors' mind.

Hunter also argues that Arntz's testimony at the evidentiary hearing is self-serving.  Of course, no attorney is eager to admit serious mistakes of law.  Arntz was under no threat of malpractice liability, however, since the one-year statute of limitations had long since run. Hunter emphasizes the details Arntz admits he could not recall, but eight years after the trial, that could betoken candor.  Hunter emphasizes that Arntz testified two months after he did; he also had Hunter pre-hearing affidavit to review.  But instead of tailoring his testimony to match Hunter's he appeared to the Court to be attempting to be candid.

Hunter's testimony was certainly forthright and internally consistent.  Since there are no third-party witnesses to his conversations with Arntz, there is no one besides Arntz to gainsay his story.  The Court must turn to external criteria of credibility to choose between the two narratives.

Hunter's serious criminal history counts heavily against him in weighing credibility. Hunter began acquiring felony convictions at the age of nineteen when he forged a prescription for Xanax.  Another forged Xanax prescription grounded a conviction at age twenty-three.  He was convicted of possessing cocaine in 2000 and again in 2001.

The Government points to other instances of Hunter's proffering unbelievable accounts of events in the face of strong circumstantial evidence to the contrary.  The Government's theory was that Hunter's operation was known as "The Platinum Crew."  Hunter claimed no such thing ever existed, but has the word "platinum" tattooed on his neck.  He claimed he did not know Amanda Ward, but his name appeared on her cellphone when she was arrested at the Microtel with a gun and drugs, his name is tattooed on her neck, and she identified herself as his girlfriend and co-conspirator.  Hunter claimed he never possessed a gun, but the Government produced at

trial a photograph of him posing with one.

Although Hunter's testimony about Arntz's advice was consistent during the evidentiary hearing, he made no such claim when he filed his *pro se* motion for judgment of acquittal (Motion, ECF No. 70). In that Motion he makes the following ineffective assistance of trial counsel claims: failure to file a pre-sentence motion, failure to file a motion to suppress, failure to object to a defective indictment, delivery of a second proposed plea agreement that was different from the first, refusal to have the seized cocaine tested to show its purity or lack thereof, failure to hire an investigator, failure to object to the destruction of evidence that was introduced at trial, failure to present tapes of recorded conversations of Richard Rainwater, failure to present the Amanda Ward Affidavit, failure to subpoena Adrienne Brooks, failure to present some fifty letters from Ward to Hunter, failure to object to the jury instructions, and failure to explain to the jury the difference between an ounce and a gram. There is no mention of what would have been egregiously erroneous advice about proving drug quantities, and this Motion was filed at a time when Hunter knew he had been actually convicted of a five kilogram conspiracy.

Lastly, Hunter somehow associates the alleged bad advice with *United States v. Booker*, and *United States v. Fanfan*, 543 U.S. 220 (2005), Those cases were decided on January 12, 2005, and were almost a year old by the time Arntz was appointed to be Hunter's lawyer. Together the cases have nothing to do with the proving the amounts of drugs involved in a conspiracy. Rather, they extended to the Federal Sentencing Guidelines the analysis of *Blakely v. Washington*, 542 U.S. 296 (2004), which held that any fact which increases the sentence beyond a legislatively-mandated guideline, even if within a statutory maximum for the offense, must be pled as an element in the indictment and proved to the jury beyond a reasonable doubt.

13

*Booker* and *Fanfan* made application of the Sentencing Guidelines advisory rather than mandatory.  Arntz recalled discussing *Booker* and *Fanfan* with Hunter, but denies the discussion would have include how amounts involved in the conspiracy could be proved.  The suggestion that Arntz did not understand *Booker* and *Fanfan* because they had just been decided is implausible.  They were very much anticipated by the criminal bench and bar and extended to the Guidelines a line of cases begun with *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

In sum, Hunter has not established the Arntz provided ineffective assistance of trial counsel by incorrectly advising him that the Government would have to physically produce five kilograms of cocaine seized from Hunter to prove the conspiracy charged in Count 1.


**Prejudice**


The second prong of the *Strickland* test requires proof that a defendant was prejudiced by an attorney's ineffective assistance.  That is, a § 2255 litigant must prove that there is a reasonable probability that the outcome of the trial would have been different but for counsels' deficient performance.  Hunter's theory is that, if he had known the Government could prove its case as it eventually did, he would have taken one of the plea bargains offered by the United States.

The two prongs of the *Strickland* test are conjunctive rather than disjunctive, so Hunter's failure on the deficient performance prong is fatal to his claim.  Briefly, however, the Court finds he also has not established the prejudice prong.

First of all, Hunter has not established that there was ever a firm offer with conditions spelled out.

14

Secondly, his testimony about the first offer is that it had a condition of cooperation with the Government which he was never willing to accept.

Third, all but the last offer, which occurred after trial started, required him to plead to the firearms charge, but he testified he was never willing to do that because it would prevent him from participation in an in-prison drug program which could shorten his sentence.

What Hunter says now he would have been willing to accept in 2006 is inconsistent with the limits he placed on negotiation of a pleas agreement at that time.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended the Court enter judgment dismissing the § 2255 Motion with prejudice.  Dismissal of Grounds One and Three through Nine is in accordance with the Court's prior decision.  Because reasonable jurists would not disagree with the Court's conclusion on those Grounds, Petitioner should be denied a certificate of appealability on them. Because the analysis of Ground Two is completely dependent on determining credibility, reasonable jurists could disagree with the recommended resolution of that claim and Hunter should be granted a certificate of appealability on Ground Two.  He is entitled to proceed on appeal *in forma pauperis*.

August 24, 2105.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).

**Because of the timing of this Report, no extensions of time to file objections will be granted except in the most extraordinary of circumstances.**