# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,  :

    Plaintiff,                              Case No. 3:06-cr-061
                                             Also 3:12-cv-302

                                             District Judge Thomas M. Rose
   -vs-                               Magistrate Judge Michael R. Merz
                                 :

CHRISTOPHER HUNTER,

    Defendant.

---

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

This criminal case is before the Court on remand from the United States Court of Appeals for the Sixth Circuit. *Hunter v. United States*, 2019 U.S. App. LEXIS 31768 (6th Cir. Oct. 24, 2019), rehearing denied, 2019 U.S. App. LEXIS 34017 (6th Cir. Nov. 13, 2019).

The case was remanded for this Court to decide Hunter's Motion for Reconsideration (ECF No. 236). Upon remand the Magistrate Judge filed a Report and Recommendations recommending that the Motion for Reconsideration be denied (the "59(e) Report," ECF No. 288). Hunter has objected (ECF No. 291) and District Judge Rose has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (ECF No. 292).

**Relevant Chronology**

Christopher Hunter's Motion to Vacate under 28 U.S.C. § 2255 was filed on September 11, 2012, more than seven years ago (ECF No. 135). On October 29, 2013, Judge Rose adopted a

Report recommending dismissal of all claims except Ground Two (ECF No. 167). An evidentiary hearing was held on Ground Two in April and June, 2014, but because of repeated continuances briefing was not complete until many months later and a Report on Ground Two was not issued until August 24, 2015 (ECF No. 209). On February 19, 2016, Judge Rose ordered the Motion to Vacate dismissed with prejudice (ECF No. 229). The instant Motion for Reconsideration, determined by the circuit court to qualify as a motion to amend the judgment under Fed.R.Civ.P. 59(e) was filed March 14, 2016 (ECF No. 233). Because of the pendency of Hunter's appeal, the Report on the Motion was not filed until December 5, 2019, two weeks after the circuit court mandate issued (ECF No. 287), but three and one-half years after the Motion for Reconsideration was filed.

**Standard for a Motion to Amend the Judgment**

The 59(e) Report sets forth the Sixth Circuit standard for granting a motion to amend the judgment (ECF No. 288, PageID 4163). Essentially a movant must show a clear error of law, newly discovered evidence, an intervening change in the controlling law, or the need to correct a manifest injustice. *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); accord: *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 551-52 (6th Cir. 2011), quoting *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010).

The Objections do not quarrel with this statement of the standard. Instead, they assert clear errors of law and newly discovered evidence (ECF No. 291, PageID 4176). These arguments will be examined in turn.

**Clear Error of Law**

Hunter's claim in Ground Two of his Motion to Vacate is that he received ineffective assistance of trial counsel when attorney Matthew Arntz advised him that the United States could not convict him as charged because it had not seized a sufficient quantity of drugs from him personally (Motion, ECF No. 135, PageID 2277). Hunter contends this bad advice led him to reject a favorable plea offer.

At the evidentiary hearing in 2014, Hunter testified to getting the bad advice but, as the Report notes, provided no corroboration in the form of notes taken of the advice at the time or testimony from the other two criminal defense lawyers with whom he claims he discussed Arntz's advice. The Report summarized this state of the evidence: "Hunter presented no external evidence of Arntz's lack of credibility." (Report, ECF No. 288, PageID 4165). Hunter argues this is clear error and then lists a full page of places in the record that supposedly "contradict Arntz's testimony or support Hunter's claim." (Objections, ECF No. 291, PageID 4177-78).

The first three of these instances relate to the alleged bad advice. *Id.* at PageID 4177. Hunter, then represented by counsel, argued the Magistrate Judge's finding that Arntz was credible was inconsistent with Arntz's admission on cross-examination that there was a theory abroad among defense counsel that *United States v. Booker*, 543 U.S. 220 (2005)[1], might have an impact on proof of drug quantities. Arntz admitted discussing *Booker* with Hunter, but denied ever advising Hunter that *Booker* would prevent his conviction on the most serious charge against him. At the evidentiary hearing nine years later, Hunter was certain the bad advice had been given.

---

[1] *Booker* and *FanFan* were handed down January 12, 2015. Hunter was arrested in September 2005, well before the implications of those decisions were fully understood by the lower courts and the defense bar.

Ultimately the Magistrate Judge credited Arntz's recollection over Hunter's.

After listing these three instances related to the alleged bad advice, Hunter then lists five other supposed instances of deficient performance by Arntz which Hunter believes undermine Arntz's credibility. *Id.* at PageID 4178. None of them are about the alleged bad advice on drug quantity. None of them were pleaded as instances of ineffective assistance of trial counsel in the Motion to Vacate. None of them were relied on in briefing the Motion to Vacate after the evidentiary hearing. Certainly the Court's failure to find on its own instances of supposed deficient performance that were not called to its attention previously does not constitute a clear error of law warranting an amendment of the judgment.

More generally, Hunter's theory seems to be that in assessing the credibility of a witness, a court must consider all possible sources of doubt in the record, whether or not cited by the opposing party, and then must given an account of its credibility assessment that satisfies some unstated external standard, failure to do so being a "clear error of law."

A credibility finding is not a conclusion of law, but the quintessential finding of fact. The most numerous and critical credibility findings in law are those made by juries who are not asked or even permitted to explain or justify their findings. In this case the Magistrate Judge did explain his credibility findings: Arntz is an experienced criminal defense lawyer, experienced enough to be on the Criminal Justice Act panel for appointment, and an adjunct professor of criminal evidence law at the University of Dayton School of Law. Hunter, on the other hand, was a convicted felon before he was charged in this case, was shown to have lied several times during its prosecution[2], was completely self-interested in his testimony at the 2014 evidentiary hearing,

---

[2] "And Hunter lied about a number of facts proven against him by concrete evidence: his acquaintance with Amanda Ward; his possession of a firearm; and various indicia of the existence

4

and had had nine years to "construct" his memory of what conversations he had with Arntz while none of his memories were corroborated. A different judge might weigh the competing credibility of these witnesses differently, but it was no "clear error of law" to consider any of these factors or to fail to consider supposed impeaching evidence Hunter did not call to the Court's attention in briefing the Motion to Vacate.

In the 59(e) Report, the Magistrate Judge found Hunter had forfeited his general objection related to "external" and "internal" evidence on credibility by not raising that objection when the 2015 Report was filed (ECF No. 288, PageID 4165-66). Hunter now claims his counsel did object on that basis, citing Objections, ECF No. 217, PageID 3324-25. Having reviewed those Objections, the Magistrate Judge finds no claim that Hunter was prejudiced by weighing "internal" and "external" evidence of credibility differently for Hunter and Arntz, which is the claim on which Hunter's Motion for Reconsideration rests: "The magistrate turned to Hunter's external criteria of credibility in making a credibility determination without looking into Attorney Arntz's external criteria of credibility. This one-sided application of Federal criminal procedures prejudiced Hunter." (ECF No. 233-1, PageID 3574)

Hunter has not shown Judge Rose committed any clear error of law in dismissing the Motion to Vacate.

**Newly Discovered Evidence**

A motion to amend the judgment may also be granted on the basis of newly-discovered

---

of the "Platinum Crew," Hunter's drug distribution organization." (59(e) Report, ECF No. 288, PageID 4165.)

5

evidence, i.e., evidence discovered between the time of the judgment sought to be amended and the time the Rule 59(e) motion is filed. In his Rule 59(e) Motion for Reconsideration, Hunter relied heavily on the Report and Recommendations of Magistrate Judge Sharon Ovington in *United States v. Stonerock,* Case No. 3:02-cr-5 (S.D. Ohio)(the "Stonerock R&R"). As explained in the 59(e) Report, in that case Magistrate Judge Ovington found Attorney Arntz suffered from an actual conflict of interest when he represented Stonerock and a co-defendant in that case when both were seeking a reduced sentence for cooperation with the United States.

The 59(e) Report expresses skepticism about how diligently Hunter sought this new evidence. In the course of doing so, the Report incorrectly states that the Stonerock R&R was issued "months before the evidentiary hearing in this case." (ECF No. 288, PageID 4168.) The correct chronology is that the evidentiary hearing in this case was completed June 19, 2014; the Stonerock R&R was filed under seal August 10, 2015; the 2015 Report on the merits of the Motion to Vacate in this case was filed August 24, 2015; and Judge Rose's Amended Entry and Order adopting that 2015 Report was filed February 19, 2016 (ECF No. 229).

In the pending Objections Hunter reports the following about his discovery of the Stonerock R&R

> At the same time that Magistrate Merz issued the 2015 Report (E.C.F. 209) Stonerock, who was housed at F.M.C. Lexington told Hunter that Magistrate Ovington had granted his §2255. Hunter had not obtained a copy of the Stonerock R&R by the time he filed his Objections on 9/11/2015 E.C.F. 217[3] Nevertheless Hunter notified the Court in his Objections. See [PageID] 3327 & footnote 3 on [PageID] 3327
>
> Hunter expected the Magistrate to analyze this as external evidence. Knowing that Stonerock's case had been vacated, was different than

---

[3] Hunter's footnote at this point reads "If Hunter's attorney had attempted examine the Stonerock R&R when it was issued 8 days prior to Magistrate Merz's 2015 Report he could not have seen it because it was sealed. Stonerock provided Hunter a copy and an affidavit stating that Hunter could use them both." Of course Hunter's attorney could have moved to unseal the Stonerock R&R, relief that was granted by this Court very promptly when it was requested.

6

> actually reading the specifics contained in the Stonerock R&R and finding out how similar his representations of Stonerock and Hunter were. Judge Rose made no mention of Hunter's previously objected to and properly raised Stonerock external criteria. Thus Hunter brought the newly discovered evidence to the courts attention at the next available time, 59 (e). Hunter did not intend on being vague but only meant that he did not physically see the Stonerock R&R until after the time of Objections. The Stonerock R&R was newly discovered evidence.

(ECF No. 291, PageID 4180).

It is correct that in his Objections to the 2015 Report, Hunter argued in a footnore: "In *Stonerock*, Arntz was recently (2015) found by this very Court to have provided ineffective assistance of counsel due to representing various clients in the same criminal matter and the Petitioner's request to vacate or modify the sentence has been granted." (ECF No. 217, PageID 3327, n. 3.) But these Objections were filed September 11, 2015, more than five months before Judge Rose's Order. The substance of the *Stonerock* R&R was evidently known by Hunter from co-inmate Stonerock well **before** Judge's Rose dismissed the case; it was not newly-discovered between the time of the dismissal order and the filing of the Motion for Reconsideration. If his claim is that what was newly-discovered was the **contents** of the Stonerock R&R, as opposed to its **substance**, his attorney could have sought unsealing before dismissal in September 2015 rather than after dismissal in March 2016. As concluded in the 59(e) Report, the Stonerock R&R does not constitute newly-discovered evidence within the meaning of Fed.R.Civ.P. 59(e).

The 59(e) Report concluded that even if the Stonerock R&R had qualified as newly-discovered evidence, it would not warrant amending the judgment because it had little relevance to the credibility of Attorney Arntz's testimony in the 2014 evidentiary hearing. Magistrate Judge Ovington did not find that Arntz had lied to the Court or had a faulty memory about past events or provided bad legal advice to Stonerock; she found he had had a conflict of interest in that one case.

7

Hunter's argument that Stonerock's case is closely analogous to his own is not persuasive. In making the argument, Hunter claims Arntz was "had a history of advising his clients wrong in the plea process." (Objections, ECF No. 291, PageID 4183.) He offers no evidence for that statement and forgets to remind the Court he made it clear he would never take a plea in any event if it entailed cooperation with the Government.

In his post-remand Supplement to his Motion for Reconsideration, Hunter cited the Court to *Byrd v. Skipper*, 940 F.3d 248 (6th Cir. 2019). A majority of the panel in that case found that the trial attorney adamantly refused to initiate plea negotiations,[4] based in substantial part on a misunderstanding of the Michigan law about accomplice liability. The Report distinguished *Byrd* (ECF No. 288, PageID 4169). Hunter objects, arguing that in *Byrd* while the district court believed the trial attorney, the court of appeals did not. (Objections, ECF No. 191, PageID 4183-84.) That misstates the holding in *Byrd*, the full text of which the reader should consult for comparison's sake. The critical difference is that Byrd testified credibly he would have accepted a plea with any sentence less than life without parole, whereas Hunter adamantly refused to consider any plea agreement which would have required cooperation with the Government. Arntz had obtained a plea offer, but Hunter walked out of the proffer session when he learned he would have to cooperate.

Hunter objects that the 59(e) Report "ignored internally inconsistent testimony of Matt Arntz." (Objections, ECF No. 291, PageID 4184) Hunter's focus here is on asserted inconsistencies between statements made by Arntz in opening and closing arguments at trial in 2007 and in the 2014 evidentiary hearing. But statements by lawyers in opening and closing are

---

[4] The court found that in Wayne County (Detroit), Michigan, the prosecutors favored plea bargains but would not initiate the negotiation process. Instead, once defense counsel indicated there might be a willingness to plead, they would prepare an offer.

not testimony. In fact, we remind jurors of that in every case and of course arguing attorneys are providing sworn testimony.

**Amendment of the Motion to Vacate**

By separate Order, Judge Rose denied Hunter's Motion to Amend the Motion to Vacate (ECF No. 227). That Order became final when Judge Rose ordered the 2255 Motion dismissed on February 19, 2016. Hunter included arguments about the Motion to Amend in his 59(e) Motion for Reconsideration. The 59(e) Report concluded Hunter had shown no manifest error of law in Judge Rose's ruling on the proposed amendments (ECF No. 288, PageID 4172). Having reviewed Hunter's arguments on this portion of the 59(e) Report (Objections, ECF No. 291, PageID 4188), the Magistrate Judge again concludes Hunter has shown no manifest error of law in Judge Rose's decision.

**Conclusion**

Having reviewed the case in light of Hunter's Objections, the Magistrate Judge again respectfully recommends that the Motion for Reconsideration, reviewed under the standard applicable to a motion to amend a judgment under Fed.R.Civ.P. 59(e), be denied. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Hunter be denied a certificate of appealability on any appeal from a decision on that Motion. Hunter is already proceeding in the Sixth Circuit *in forma pauperis* and no recommendation needs to be made on that question. Rather, the Court should enter a final judgment under Fed.R.Civ.P. 58

dismissing the Motion to Vacate with prejudice. The Sixth Circuit can then proceed to consider Ground for Relief Two on the merits. The Court should also advise the circuit court that district court proceedings are complete and Hunter's prior Notice of Appeal is now effective.

January 1, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.